29 C.C.P.A. (Patents)

### In re DAVIS et al.

#### Patent Appeal No. 4515.

Court of Customs and Patent Appeals.
Dec. 1, 1941.

W. E. Currie and P. L. Young, both of New York City, and W. F. Weigester, of Washington, D. C., (J. K. Small, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claim 3 of appellants' application for a patent upon the ground that it is drawn to subject matter not divisible from that claimed in appellants' patent No. 2,087,682, issued July 20, 1937. Appellants' instant application was filed on May 26, 1936.

Claim 3 reads as follows: "3. The method of making a pour test depressor which will be effective in heavy oils, which method comprises heating a mixture of a chlorinated wax with naphthalene to reaction temperature, adding aluminum chloride to the heated mixture, agitating the mixture during the addition of the aluminum chloride and separating the resultant pour point depressor from sludge and impurities."

It appears that this claim was copied for interference purposes from a patent to one MacLaren, No. 1,963,917, issued June 19, 1934. This patent was not returned by the Patent Office as a part of the record herein.

Appellants' application relates to an improvement in the process of making pour test depressors for use in lubricating oils. The application states:

"The present invention relates to the art of producing oils of low cold test from oils containing waxy hydrocarbons, and more specifically, to an improved method for preparing a pour inhibiting substance which may be added to the wax-containing oils. The invention will be fully understood from the following description:

"In a prior patent, U.S. 1,815,022, issued July 14, 1931, a process for producing low cold test oils from wax-containing hydrocarbons is disclosed. In this patent the particular method disclosed comprises the addition to the oil of a small amount of a class of substances comprising low temperature aluminum chloride condensation products of paraffin wax and aromatic hydrocarbons such as naphthalene.

"According to the present invention, a pour inhibitor is produced by mixing a chlorinated waxy hydrocarbon, such as chlorinated wax, with an aromatic compound, particularly a polycyclic aromatic hydrocarbon such as naphthalene, bringing the mixture to a temperature suitable for the condensation of these two constituents and adding to the mixture, at spaced intervals, portions of a condensing agent, such as aluminum chloride, while constantly agitating the reaction mixture and maintaining the reaction temperature substantially constant by cooling if necessary. * * *

* * *

"According to a specific modification of the present invention, which is fully described in our co-pending application, Ser. No. 576,208, filed Nov. 19, 1931, of which the present application is a continuation in part, the process is simplified and the product is improved by maintaining the reaction temperature at all times below about 125° F., preferably below 100° F., a diluent being preferably employed, and by discontinuing the reaction before it reaches its final stage. This specific embodiment is

based upon the discovery that the pour inhibiting properties of the product reach an optimum value at a stage of the reaction prior to the completion thereof. While the pour inhibiting potency of the condensation product is not destroyed by permitting the reaction to go to completion, the further chemical change which occurs between the point of optimum pour inhibiting value and completion of the reaction does, in many instances, decrease the pour inhibiting value of the product and detracts from the appearance of the final product."

The co-pending application, Ser. No. 576,208, is the application upon which appellants' said patent was issued. This patent contains the following recital:

"In a prior patent U.S. 1,815,022 issued July 14, 1931, a process for producing low cold test oils from wax-containing hydrocarbons is disclosed. In this patent the particular method disclosed comprises the addition to the oil of a small amount of a class of substances comprising low temperature aluminum chloride condensation products of paraffin wax and aromatic hydrocarbons such as naphthalene. The present invention is an improved method for producing these condensation products whereby materials of superior inhibiting powers are produced.

"In the prior known method of producing condensation products of the class described for pour inhibiting purposes, the condensation is preferably carried out between a chlorinated derivative of paraffin wax and a hydrocarbon such as naphthalene at low temperatures, say from room temperature to about 160° F. But it was stated that at the end of the reaction, or in order to force the reaction to its conclusion the temperature is gradually raised to about 200° F. and held at that point for a short while. The purpose of this step was stated to be in order to bring the reaction to its conclusion and, furthermore, it served to put the aluminous sludge in such a condition that it might be readily settled from the oil. It has now been discovered that it is preferable to keep the temperature at all times below about 125° F., or even lower, for example, at 100° F., and to discontinue the reaction before it has reached its final stage. * * *"

Claim 2 is illustrative of the claims of the patent and reads as follows: "2. An improved process for producing valuable pour inhibiting substances comprising the steps of condensing a material selected from the group of substances consisting of chlorinated derivatives of paraffin wax or olefins derived therefrom through the agency of a catalyst of the aluminum chloride type, stopping the reaction before its normal conclusion at a point when the aluminous sludge settles with difficulty, and recovering the oily product."

Throughout the specification of this patent it is made clear that the duration of the reaction was the principal inventive concept of the applicants, and each of the claims in the patent contains the element of stopping the reaction before its normal completion.

The examiner had rejected certain claims of the application, No. 576,208, which rejection was reversed by the Board of Appeals. In its decision the board stated: " * * * The alleged novelty of the present claims resides in terminating the reaction slightly before its normal conclusion which obviously takes place whenever all of the chlorinated wax has entered into combination with the naphthalene. * * *"

It also appears that the claim now before us was inserted in appellants' earlier application upon which said patent was issued, it being copied for purposes of interference from said patent to MacLaren. The claim in said early application was numbered 16 and corresponded to claim 4 of the MacLaren patent.

In the prosecution of appellants' early application this claim was rejected by the Primary Examiner, with others, for lack of disclosure in appellants' application. Appeal was taken to the Board of Appeals upon all of the claims so rejected. Before decision, appellants withdrew their appeal as to claim 16 (corresponding to the claim now before us) for the reason, as stated by them, that appellants had filed a new application in which said claim 16 was included. This new application is the one now before us. The board therefore dismissed appellants' appeal in their early application as to said claim 16.

Coming now to appellants' instant application, it would appear from the decisions of the Patent Office tribunals that the claim before us (with others) was originally held allowable to appellants, and an interference was declared between said application and the MacLaren patent, but that, on a motion to dissolve made by MacLaren, it was held by the Primary Exam-

iner that count 3, corresponding to claim 3 of the present application, reads upon the disclosure of a British patent to one Maverick, No. 396,147, of 1933, and that the count was not supported by the disclosure of appellants' earlier application upon which their patent was issued. If claim 3 is supported by appellants' early application the British patent to Maverick would not be available as a reference because appellants' earlier application antedated the British patent.

The examiner also held that appellants could not rely upon their earlier application to support count 3 for the reason that this matter was res judicata inasmuch as they did not perfect their appeal from the rejection by the examiner of claim 16, corresponding to the claim now before us, during the prosecution of said earlier application.

The Primary Examiner, for the reasons stated, dissolved the interference as to count 3. Upon appeal the Board of Appeals did not agree with the Primary Examiner as to lack of disclosure of the count in appellants' said early application, but held that the subject matter of said count 3 was not divisible from the subject matter claimed in appellants' patent issued upon their earlier application, and that therefore appellants were estopped from making the claim corresponding to the count in their application now before us.

In its decision upon said motion to dissolve the board stated:

"The party MacLaren urged before the Primary Examiner that the party Davis and Swoope's right to rely upon their earlier application to support count 3 should not be permitted because this matter was res adjudicata inasmuch as they did not perfect their appeal during the prosecution of that application.

"We have carefully considered the arguments of both parties but in our opinion this matter is not res adjudicata if the subject matter of count 3 is divisible from the subject matter claimed in the Davis and Swoope patent No. 2,087,682. We believe it is clear, however, that inasmuch as they canceled this claim, after rejection, from the original application, they cannot obtain it by way of reissue of that patent, and we are satisfied that if there is no proper line of division, they cannot obtain a claim in another application which would be barred in a reissue. The examiner did not dis-

cuss this aspect of the situation and we find no satisfactory discussion in the briefs of the parties. We have inspected the claims of the Davis and Swoope patent and it is not clear to us that the subject matter of count 3 is for a different invention from that claimed in the patent. We believe that the difference is merely one of scope. In the absence, therefore, of convincing argument that there is a proper line of division, we consider that the party Davis and Swoope should be held to be estopped from urging count 3 in the application involved in the interference on the ground of res adjudicata."

Therefore the decision of the Primary Examiner dissolving the interference as to count 3 was affirmed. In denying a motion for reconsideration made by appellants the board stated:

"The party Davis and Swoope petitions for reconsideration of the appeal decided on April 26, 1938.

"They urge that the appealed counts are for a different invention from that claimed in their patent No. 2,087,682, in that the claims of the patent emphasize stopping the reaction before its normal conclusion while the appealed counts specify the addition of the aluminum chloride to the heated mixture.

"This party does not contend that the counts will not read upon the disclosure of their patent and while we recognize, of course, that the two features pointed out are not necessarily interrelated, we are of the opinion that if Davis and Swoope had undertaken to obtain a reissue of their patent in order to add the claims in question, it would not have been refused on the ground that the claims are for a different invention. We do not believe that, in the process under consideration, the fact that one group of claims sets forth one step specifically and another sets forth another step specifically, would be regarded from the standpoint of reissue as for different inventions."

In denying a second motion for reconsideration the board stated: " * * * In this instance we believe that when the Davis and Swoope patent expires, the public should be at liberty to follow the directions given therein for carrying out the process they claim. We think that count 3 of this interference is a statement of those directions up to a certain point. If that patent had disclosed two patentably distinct meth-

ods of mixing together the chlorinated wax, naphthalene and aluminum chloride, perhaps the situation would have been different. With the disclosure as it is, however, we are still of the opinion that a second patent, containing a claim corresponding to count 3 of this interference, should not issue. We believe that those entitled to use the matter claimed in the patent should not be required to employ some other order of mixing than the only one which we think is described."

Thereafter the examiner on January 14, 1939, rejected claim 3 with others. On July 14, 1940, appellants appealed from this rejection to the Board of Appeals. In his statement upon appeal from this rejection to the Board of Appeals the ex· aminer stated:

"The claims are copied from the foregoing patent to MacLaren, and correspond to claims 1, 2, 4, 5, 14, 15, and 16 therein. These claims were made the subject of interference (No. 73,367) between applicants and the aforesaid patent. This interference was dissolved by action of the Board of Appeals, the Primary Examiner, and the Examiner of Interferences.

"This decision of the Board of Appeals (April 26, 1938) affirmed the decision of the Primary Examiner as to claims 3 and 7. The Board held claim 3 to be not available to applicants by reason of estoppel and res adjudicata. The Board held claim 7 to be unpatentable over a reference (Br. 396,147 supra). May 20, 1938, the Board held applicants' petition for reconsideration denied.

· * * *

"In view of these facts the non-allowability of these claims to applicants is obviously settled. The interference was terminated by proper authority and should not be redeclared as would be the case if any of the claims herein were now to be allowed.

"Accordingly it is submitted the rejection by the Primary Examiner, pursuant to the decisions in interference, was proper and should be sustained."

On July 14, 1939, the same day on which appeal was taken to the Board of Appeals, appellants filed an affidavit of one Lieber tending to support appellants' claim that the invention defined by the claims of the patent can be carried out without infringing claim 3 now before us, should it be allowed, by following the initial steps of the process described in the Davis patent No. 1,815,022.

 In their brief appellants claim that the Primary Examiner and the Board of Appeals ignored said affidavit and that this constituted error. However, this alleged error is not mentioned in appellants' reasons of appeal and will not be considered by us. We think, however, that it is proper to state that if said affidavit was filed before the notice of appeal to the Board of Appeals, so far as the record shows there was no request for the consideration of said affidavit by the examiner. If the affidavit was filed after the filing of the notice of appeal, the board was at liberty, under rule 138 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix, to ignore the affidavit.

The Board of Appeals, in affirming the decision of the examiner rejecting the claim before us, stated:

"The only question for consideration in this appeal is whether claim 3 is drawn to subject matter divisible from that claimed in appellants' patent No. 2,087,682.

* * *

"In Interference No. 73,367 we held that there was no proper line of division and inasmuch as we consider that that decision should be regarded as the law in the case for this Office, we shall not enter into any discussion of the arguments advanced in appellants' brief.

"In our inter partes decision we held that the difference between the claims of the patent and the claim now under consideration is merely one of scope. In reply to a petition for reconsideration therein, we stated on June 8, 1938:

" ' * * * we believe that when the Davis and Swoope patent expires, the public should be at liberty to follow the directions given therein for carrying out the process they claim. We think that count 3 of this interference is a statement of those directions up to a certain point. If that patent had disclosed two patentably distinct methods of mixing together the chlorinated wax, naphthalene and aluminum chloride, perhaps the situation would have been different. With the disclosure as it is, however, we are still of the opinion that a second patent, containing a claim corresponding to count 3 of this interference, should not issue. We believe that those entitled to use the matter claimed in the pat-

ent should not be required to employ some other order of mixing than the only one which we think is described.'

* * *

"The decision of the examiner is affirmed in holding that claim 3 is drawn to subject matter indivisible from that of appellants' patent 2,087,682.

■ It will be observed that the board stated that only one order of mixing is described in appellants' patent. Were this a fact, we would be compelled to affirm the decision appealed from, for it is elementary that an applicant for a patent must describe his invention in such terms that any person skilled in the art may use it. If, therefore, the process described in the illustrative example of appellants' patent *must* be followed in order to utilize the invention claimed therein, it would follow that if a patent be granted upon the involved claim no one could, upon the expiration of the earlier patent, use the matter claimed therein without infringing the later patent.

However, we cannot agree with the statement of the board that appellants' patent describes only one order of mixing together the chlorinated wax, naphthalene, and aluminum chloride. One order of such mixing is set forth in the illustrative example in appellants' patent. A different order of mixing is set forth in the patent to Davis (one of the appellants here), No. 1,815,-022, which patent is specifically referred to in appellants' patent as disclosing a process over which appellants' patent is an inventive improvement, viz., in discontinuing the reaction before it has reached its final stage.

This question of whether two methods of mixing the ingredients were disclosed in appellants' patent was not discussed by the board, although it stated that: "If that patent had disclosed two patentably distinct methods of mixing together the chlorinated wax, naphthalene and aluminum chloride, perhaps the situation would have been different."

The Solicitor for the Patent Office in his brief does not deny that appellants' patent shows two orders of mixing, one by the illustrative example set forth in the patent and the other that shown in the patent to Davis and specifically referred to in appellants' patent. The Solicitor, however, does suggest that the order of mixing here claimed is not patentably distinct from the

order described in the Davis patent. This question will be later discussed herein.

Neither does the Solicitor for the Patent Office discuss in his brief the question of whether, if appellants' patent does in fact show two orders of mixing the ingredients, and if the order here claimed is patentably distinct from the order set forth in the Davis patent, appellants are entitled to an allowance of the claim before us. Upon this point the Solicitor states: "Assuming that the reference in appellants' already issued patent No. 2,087,682 to the Davis patent No. 1,815,022 might be regarded as implying that a different order might be used in mixing the ingredients, that fact, it is submitted, cannot alter the clear disclosure in the patent given in the illustrative example of the process (R. 44)."

The above-quoted statement is perfectly true, but it does not affect the question here considered, viz., whether if the initial steps of the illustrative example in appellants' patent be in fact inventive, appellants are entitled to a separate patent for that invention, another process or order of mixing being disclosed in the Davis patent which may be followed by the public upon the expiration of appellants' patent No. 2,-087,682.

After diligent search we have found no adjudicated cases bearing directly upon the issue now under consideration.

■■ It is of course true that an applicant may not receive two patents for the same invention. The leading case upon this subject is that of Miller v. Eagle Manufacturing Company, 151 U.S. 186, 198, 14 S.Ct. 310, 315, 38 L.Ed. 121, wherein it was said:

" * * * no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character, than the specific claims, contained in the prior patent, is also void; but that where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained.

"In the last class of cases it must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that covered by the first patent; in

other words, it must be something substantially different from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent. If the case comes within the first or second of the above classes, the second patent is absolutely void."

It is apparent that the claim before us is distinctly different from the claims of appellants' patent. The claim before us recites a specific order of mixing the reactants and catalyst in a process without limitation as to its duration, while the claims of appellants' patent recite a specific limitation in the duration of the process with no limitation in the order of mixing.

As stated by the Board of Appeals, the novelty of the claims of the patent resides in terminating the reaction before its normal conclusion. The novelty of the claim before us resides in the order of mixing the ingredients.

There can be no doubt that the claims of the patent and the claim before us are for separate inventions; but under the rule laid down in Miller v. Eagle Manufacturing Company, supra, the invention here claimed must be independent from the invention claimed in appellants' patent.

If the process claimed in appellants' patent could not be carried out without employing the process here claimed, or if the patent specification had disclosed only the illustrative example hereinbefore referred to as a method of carrying out the process claimed therein, it could not be said that the invention here claimed is independent of the invention claimed in appellants' patent. But such is not the case. The invention embodied in the claims of appellants' patent can be practiced without resort to the invention here claimed. Inasmuch as the invention claimed in appellants' patent is not dependent upon the invention here claimed, it must be held to be independent thereof, and patentability is not barred by the rule set forth in the case last above cited.

In the foregoing we have assumed that the claim before us is per se patentable and would have been allowed had it not been for the disclosure of the invention in appellants' patent, the board holding in effect that the invention there claimed could not be utilized without using a particular process there disclosed and here claimed.

However, the Solicitor for the Patent Office in his brief argues that the change in the order of the steps set forth in the illustrative example set forth in appellants' patent and here claimed is not inventive, and he cites a number of cases wherein we have held that a change in the order of steps of a process did not involve invention.

It is our opinion that, upon the record before us, we may not consider this question for it does not appear that the claim before us has been held unpatentable by any of the Patent Office tribunals upon the ground that the order of mixing here claimed is not of itself inventive.

It appears that the claim in the application before us was originally held allowable by the Primary Examiner, and was finally disallowed only upon the ground that it is not divisible from the subject matter claimed in appellants' patent. In the decision appealed from the board expressly stated that this was the only question before it.

If the Patent Office tribunals were of the opinion that the order of mixing embraced in the claim before us was not patentable, irrespective of the question of divisibility from the subject matter claimed in appellants' patent, they should have so held.

As the claim has not been rejected upon a ground now urged by the Solicitor for the Patent Office, we may not consider that question. In re Tucker, 54 F.2d 815, 19 C. C.P.A., Patents, 810.

Therefore, assuming, as we must upon the record, that the order of mixing set out in the claim before us involved the exercise of the inventive faculty, it is apparent that appellants' patent disclosed two inventions, viz., (1) the termination of the reaction before its normal conclusion, regardless of the order of mixing the chlorinated wax, naphthalene and aluminum chloride, and (2) the order of mixing said materials regardless of the termination of the reaction.

The claims of the patent may be practiced without infringing the claim before us if allowed, and the claim before us can be practiced without infringing the claims of appellants' patent.

Inasmuch as it is our opinion that the invention here claimed is independent of and distinct from the invention claimed in ap-

pellants' patent, we must hold that the Board of Appeals erred in its holding that the claim before us is drawn to subject matter indivisible from that of appellants' patent No. 2,087,682, and the decision appealed from is reversed.

Reversed.