31 C.C.P.A.(Patents)

## In re HANSEN.

### Patent Appeal No. 4813.

Court of Customs and Patent Appeals.

March 6, 1944.

Herbert H. Thompson and Paul B. Hunter, both of Brooklyn, N. Y. (James E. Nolan, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting as unpatentable over the prior art all of the claims, 1, 3, 4 and 5, of an application for a patent alleging "certain new and useful improvements in High Frequency Apparatus For Heating Organic Material." The application is a division of application Serial No. 92,787, filed July 27, 1936, upon which patent No. 2,190,712 issued.

Claim 1 is a method claim, the other claims being for apparatus. Claims 1 and 3 are illustrative of the subject matter involved and read as follows:

"1. A method of increasing temperature of conducting and non-conducting organic and inorganic matter which comprises placing such matter within a closed conducting resonant chamber, connecting an ultra high-frequency oscillation generator to said chamber, and energizing said chamber by said generator whereby ultra high-frequency oscillating fields may be set up therein passing through said matter, said fields being resonant within the chamber at a frequency characteristic of the latter."

"3. In an apparatus of the character described, a substantially closed chamber having conducting walls and adapted to contain material to be raised in temperature, electro-static coupling means within said chamber comprising a plate capacity coupled to the wall of said chamber, an ultra high-frequency cavity oscillator oscillating at a natural frequency of said chamber, and means connecting the output of said cavity oscillator to the wall of said chamber and to said plate for setting up a standing electro-magnetic field resonant within said chamber at a natural frequency thereof."

The application relates to an electrical high-frequency apparatus and method for heating organic and inorganic material, and more specifically for administering diathermy treatments.

The objects of the claimed invention are set out in appellant's specification as follows:

"The principal object of the present invention is to provide novel high frequency oscillator means adapted to set up a standing electromagnetic field in a suitable space or chamber wherein the material or body to be heated is contained, the resulting flow of high frequency currents through the material or body serving to effect the elevation of the temperature thereof.

"Another object of the present invention is to provide novel high frequency apparatus for producing high temperatures in living as well as dead organisms."

In one of the drawings of the application an entirely closed cubical chamber is shown in which the person being treated is seated on a chair. The walls of the chamber are of metal connected with a high-frequency electrical oscillator. Within the chamber and a short distance below the top wall thereof is a plate to which the oscillator is also connected. The chamber is built in such shape and size that its frequency characteristic is resonant with the high-frequency oscillation field which is used, and when the apparatus is in operation the patient will be subjected to electrical oscillations of a desired frequency.

The references cited are:

Carlson et al., 1,338,812, May 4, 1920;

Schereschewsky, U. S. Public Health Service, Reprint No. 1110, G. P. O., Washington, D. C., 1926;

Esau (Swedish), 75,279, September 13, 1932;

Reiter, British Journal of Physical Medicine, December 1933, pages 119–121;

Turner, 2,125,969, August 9, 1938;

Hansen, 2,190,712, February 20, 1940;

Westinghouse, Short Wave Endotherm, November 1938, pages 10–14.

The Carlson et al. patent relates to an apparatus for electrical diathermy treatments, and discloses means for producing and utilizing high-frequency currents. In one of the drawings of the patent an inductance coil is shown connected with a source of high-frequency oscillations. In operation the inductance coil is brought near the body of the patient in which high-frequency current is induced "due to the eddy current effect produced by the magnetic field created around the inductance * * * by the sustained high frequency currents surging therein. The circuits are adjusted to resonance at a frequency substantially above that frequency which would be detected by the nervous system of the body."

The Schereschewsky reference is a paper reporting the result of studies of the effects upon laboratory animals of electrical oscillations of very high frequency generated by a vacuum-type oscillator. The publication describes the effect of such oscillations upon a mouse placed between two pieces of celluloid held apart by posts and placed between the plates of a condenser. The pieces of celluloid are referred to in the reference as a box of insulating material.

The Esau patent relates to a device for diathermy treatments by means of high-frequency fields. The device is used to produce ultra-short waves of less than 10 meters. It is stated in the patent that both an electric alternating field and a magnetic alternating field can be used simultaneously. One of the drawings of the patent depicts the body of a patient enclosed with a metal screening being subjected to the short wave field.

The Reiter reference is an article relating to the effect upon various tissues of the human body of the application of different electrical wave lengths and describes the investigations of workers in the field of electro-therapeutics. The use of wave lengths between 2.85 and 20 meters is disclosed.

The Turner patent relates to electrical oscillators, more particularly to an ultra high-frequency transmitter, used in the radio field, in which the oscillator is contained within a small shielded metal container.

The Westinghouse Short Wave Endotherm reference is taken from a manual of instructions for the operation of apparatus for applying electrical short wave oscillations to different parts of the body in diathermy treatment. The publication contains illustrations of various parts of the human body being treated. Those parts are shown to be placed between electrodes in some instances and in others the parts are surrounded by a coil.

The Hansen patent was issued on the parent application of which the instant application is a division. It relates to high-efficiency oscillating circuits for ultra high-frequency and is for a hollow body resonator oscillator per se.

The examiner in his decision stated that the effect upon living organisms of a high-frequency electrical field had been well-

known for years as shown by Carlson et al., Schereschewsky and Reiter, and that for the localization of effect in physical treatment the conductor could be arranged to surround the body to be treated as disclosed in the "Endotherm" reference. With respect to the appellant's allusion to the electrical fields as being "resonant" or "standing", the examiner pointed out it was characteristic of an electrical conductor that the electric current in it will oscillate at the natural [resonance] frequency and thus exhibit what are called "standing waves" similar in energy flow aspect to the mechanical vibration characteristics of wires, plates and bells.

The examiner held it had not been shown that appellant's device produced any new phenomenon or principle and that there was no reason to believe that organisms within its field would have a different effect from a "standing wave" than that of a series of progressing waves of the same frequency and amplitude. The examiner stated that it was quite common to treat organisms by placing them in a field of standing waves for the reason that it was desirable to obtain maximum amplitude at the point of application in the work circuit. In this connection he pointed out that the mouse referred to in the Schereschewsky reference was subjected to treatment between plates of a circuit tuned to resonance, and in the Carlson et al. patent the secondary or load circuits were tuned to resonance and that therefore those circuits produced standing waves.

The examiner stated he was unable to see that there was any invention in a method of treating an organism according to appellant's application, although he had apparently made an invention in an oscillator device covered by his patent heretofore referred to.

For the reasons hereinbefore set out the examiner rejected claim 1 as unpatentable over the Carlson et al., Schereschewsky, Reiter and "Endotherm" references. The examiner rejected claim 3 as unpatentable over the Esau patent in view of the patents to Hansen, Turner or Clavier, all of which he stated show hollow body resonator oscillators. The Clavier reference is not contained in the record and no reference is made thereto in the briefs before us. The reason for rejecting that claim was as the examiner stated that the teaching of placing a subject within the field of a resonant body as in the Esau patent would, without the exercise of the inventive faculty, lead to the positioning of a subject in the field of a hollow body resonator for the same purposes.

Claims 4 and 5 were rejected as unpatentable over the Esau patent. In that patent the oscillator is indicated on a table placed in proximity to the patient and connected with electrodes placed opposite each other on either side of the part to be treated. The examiner held that it was patentably immaterial whether the oscillator was located within or without the screening of the Esau patent for the reason that the difference was merely that of a short length of insulated and shielded wire passing through a wall. The examiner stated that appellant had argued before him that the Esau patent does not disclose the screen member enclosing the subject to be resonant at the frequency supplied by the oscillator. He reasoned that even though that point were conceded it still would not establish patentability of claims 4 and 5 since:

"(1) the claims merely require that a standing wave field be set up within the container, a result that is accomplished by the plates within the container connected to the oscillator, and since (2) the resonance or off-resonance of the container does not involve a difference in action on, or reaction of, the subject under treatment."

The examiner further pointed out that the only difference between claims 4 and 5 is that in claim 5 there is a coupling means of the magnetic type and comprising a loop linking the standing field within the container, stating that this is a standard coupling between circuits and no invention would be involved in selecting it in the claimed combination.

The Board of Appeals affirmed the decision of the examiner stating that the cited prior art indicated, what had been recognized for a number of years, the effect of a high-frequency field upon animate beings. The board then held that the "Endotherm" reference shows that greater effectiveness in the functioning of high-frequency fields is obtained by surrounding the subject being treated with conductors. The board further stated:

"Appellant proposes to place the subject in a hollow metallic body, the electric flow and wave energy appearing on the inner surface of the body, so that the walls of the body act as a shield. Both the Public

Health [Schereschewsky] and the Endothermy publications show the subject partially surrounded with walls during treatment. To entirely surround the subject so as to produce a closed chamber apparently would not *product* any result other than degree. We are convinced that the reasons given by the examiner are sound and the rejection of all the claims should be affirmed."

The decision of the Board of Appeals was dated July 21, 1942. On August 3, 1942, appellant presented his request for reconsideration of the board's decision, pointing out among other things that the "Endotherm" reference was improperly cited and relied on, since its publication date, November 1938, is subsequent to the filing date of appellant's parent application, July 27, 1936. On September 10, 1942, the board dismissed appellant's request for reconsideration for the reason that it had not had an opportunity to consider it until after appellant had filed his notice of appeal to this court on September 4, 1942. The board held that it had lost jurisdiction because of that appeal, citing In re Allen, 115 F.2d 936, 28 C.C.P.A., Patents, 792.

Appellant in his reasons of appeal did not specifically allege error against the reliance by the board on the "Endotherm" reference because of its late date, and for this reason that reference must be considered here for what it is worth. In re Davis et al., 123 F.2d 651, 29 C.C.P.A., Patents, 723.

Appellant was not required to file his notice of appeal as early as September 4, 1942, in view of the amendment to rule 149 which took effect on September 1, 1941, published at 6 F.R. 3923 and 529 O.G. 509, which provides that "if a petition for rehearing or reconsideration is filed within 20 calendar days after said decision, the notice of appeal may be given and the reasons of appeal filed within 15 calendar days after action on the petition."

Appellant concedes that it is old as shown in the prior art of record to utilize high-frequency energy for diathermy treatment. We are unable to see, however, that any of the prior art provides for a method of treatment whereby the fields in which the subject to be treated is placed are resonant within a closed chamber at a frequency characteristic of the chamber. None of the references discloses an apparatus providing for a closed or substantially closed resonant chamber.

The only reference in the cited art showing an enclosure which may surround a patient is the Esau patent. There the subject is placed within a circular metal screen which may be of homogeneous metal or a plurality of parallel wires, open at the top. The screening is not connected with the electrical circuit and the patient is treated by means of plates situated opposite each other covering the portion of the body to be treated. It is stated in the patent that instead of the electric alternating field just described the magnetic alternating field can be used. That magnetic alternating field, however, comprises the surrounding of the part to be treated with a coil not touching the part or the coil being in proximity to such part. It is obvious that such fields as have been described can be used simultaneously or separately. It is also stated in the patent that the reason for enclosing the body subjected to the short wave field with a metal screening is to avoid the loss of energy caused by sparking phenomenon at the electrodes, causing temperature increases in persons stationed near the patient of as much as 1° in an hour as the result of the displacement currents caused by the sparks. Therefore it is clear that the enclosure disclosed by the Esau patent is for a shield only and is intended to divert radiation so that it flows out of the ends of the wires of the shield, and likewise protect those who might be near the patient. The device of the Esau patent in our opinion does not anticipate the device defined by the claims, for the reason that instead of implying resonance in the shield the latter is not even part of the circuit. It appears to us that appellant's entire invention hinges on the maintenance of resonance within a chamber at its natural frequency characteristic, and we find nothing in the references which would make it obvious to one skilled in the art to construct the apparatus or use the method of appellant.

For the reasons heretofore stated the decision of the Board of Appeals is reversed.

Reversed.