31 C.C.P.A. (Patents)

## YEATES v. BAER.

### Patent Appeal No. 4885.

Court of Customs and Patent Appeals.

May 22, 1944.

Rehearing Denied June 26, 1944.

Cushman, Darby & Cushman, of Washington, D. C., (John J. Darby, of Washington, D. C., H. J. S. Dennison, of Toronto, Canada, and Gorham F. Freer, of Washington, D. C., of counsel), for appellant.

Frederick Griswold, Jr., of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

Appellant appealed from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter of the two involved counts to appellee.

The interference as declared involved an application of appellant, Serial No. 299,575, filed October 14, 1939, for Tobacco Pouches, and an application of appellee, Serial No. 265,072, filed March 31, 1939, for Containers. The interference was redeclared in order to substitute a divisional application of appellee, Serial No. 388,481, filed April 14, 1941. The oath of appellant's application states that on January 11, 1939 he had filed an application for the same invention in Canada, Serial No. 459,348, and claimed priority of invention thereunder.

Appellant made no motion to shift the burden of proof and was held by the board to be the junior party, having the burden of proving his case by a preponderance of the evidence.

Both parties took voluminous testimony and filed many exhibits.

Appellant died before the interference was declared. The preliminary statement filed on his behalf alleged conception of the

invention on or about the middle of February 1938; first written description and drawings thereof on January 11, 1939 (the date of filing of the said Canadian application); and reduction of the invention to practice on or about July 13, 1938.

Appellee alleged in his preliminary statement the first drawing and written description of the invention defined by the counts and disclosure of it to others on or about July 26, 1938, and reduction to practice on or about August 2, 1938.

The counts, which were drawn by the Primary Examiner and suggested to the parties, read as follows:

"1. A hermetically sealed envelope comprising a rectangular sheet of metal foil provided with a film of rubber hydrochloride secured to one face thereof, substantially one third of said sheet being laterally folded upon the adjacent portion in edge coinciding relation with said film on the inside, said opposite coinciding edge portions being permanently sealed together by means of pressure applied at a temperature sufficiently high to cause merger and permanent union of the films, and a zone adjacent the free edge of said folded portion but spaced therefrom being superficially sealed by means of pressure applied at a temperature below the temperature causing merger and permanent union of the films, said zone extending from one permanently sealed edge to the other and said films at said zone being readily manually separable in the plane of contact of the joined surfaces.

"2. A method of forming a hermetically sealed envelope comprising, securing a film of rubber hydrochloride to one face of a rectangular sheet of metal foil, laterally folding substantially one third of said sheet upon the adjacent portion in edge coinciding relation with said film on the inside, applying sealing pressure throughout the opposite coinciding edge portions at a permanent sealing temperature, said temperature being sufficiently high to cause merger and permanent union of the films and applying sealing pressure to a zone of said folded portion adjacent to the free edge thereof but spaced therefrom and extending from one permanently sealed edge to the other, the last named sealing pressure being applied at a temperature below the permanent sealing temperature whereby a superficial bond is formed which is readily manually separable in the plane of contact of the joined surfaces."

The interference relates to a pouch particularly adapted for carrying tobacco, which pouch comprises a laminated sheet of metal foil and rubber hydrochloride, known in commerce as "Pliofilm." The Pliofilm is folded upon itself, forming the interior of the pouch, with the side edges permanently sealed and the mouth temporarily sealed.

Both parties moved to dissolve the interference; both motions were denied.

No formal notice was given of appellant's reliance for priority upon the date of his Canadian application, but a certified copy thereof, which is a duplicate of appellant's United States application, was filed in the Patent Office after the time for taking testimony had expired but prior to the final hearing. Appellee moved to strike and suppress appellant's offer of the Canadian application and requested that the motion be considered at final hearing. Consideration of the motion was, upon order, deferred until that time. The Board of Interference Examiners in its decision made no reference to the said motion and awarded priority of invention to appellee on the ground of prior conception, August 1, 1938, and derivation by appellant from appellee.

The decision of the board analyzed the evidence of both parties in considerable detail, but it is not necessary for us to do so.

The reasons of appeal are 29 in number but appellant relies on Nos. 3, 5 and 6 as alleging error in the board's holding that appellee's Exhibit 60 constitutes evidence of conception of the invention; Nos. 7 to 11, inclusive, as alleging error in the board's conclusion concerning derivation of the invention; and Nos. 14, 15 and 29 as alleging error in not finding prior conception of the invention and reduction to practice thereof by appellant on the basis of his Canadian application.

Appellant in his brief states that the following portion of the board's decision contains the errors relied upon:

"The testimony clearly shows that Baer is entitled to the date of August 1, 1938 for conception; as this is prior to any date established by Yeates and as Baer asserts that he disclosed the invention to Yeates on August 2, 1938 in the presence of Chapman and Dr. Palmer, which assertion was not denied in the rebuttal testimony of Mr. Chapman and Dr. Palmer; and as the conduct of Yeates, especially in asking Baer to assign his application to North

American Containers, tends to strengthen Baer's assertion that he disclosed the invention to Yeates, it is held that Yeates derived the invention in issue from Baer. Consequently, Baer is entitled to the award of priority."

The board held that by May 12, 1938, both parties were aware that Pliofilm could be sealed with permanent and temporary seals. This holding is disputed in the brief of appellant, but there is no reason of appeal assigning error to such holding and therefore we must accept it as correct.

Appellee's Exhibit 60 is a sheet of paper upon which is a sketch made by appellee of a tobacco pouch and a written description thereof by him dated July 26, 1938, and witnessed August 1, 1938. The sketch is of a device substantially similar to a pouch made under a United States patent to appellant. That pouch, however, comprised a tacky rubber coating on a base, the rubber surface being turned upon itself and constituting the lining of the pouch, sealed along the edges and the mouth, the mouth adapted to be resealed by running the thumb-nail or other means close to its edge. Apparently the only difference between the involved pouch and that of appellant's patent is that instead of using tacky rubber as a lining for the pouch, which was undesirable from an American sales standpoint, the laminated Pliofilm and foil is the material from which it is made.

In the description of Exhibit 60 appellee referred to the making of permanent and temporary seals in a Pliofilm and foil pouch with specific heat and pressure. The board, in view of its holding that on May 12, 1938 both parties knew that permanent and temporary seals of Pliofilm could be made, stated that when appellee described the making of the seals with specific heat and pressure he referred to those heats and pressures which were known at that time to produce the desired results. Hence the board concluded that Exhibit 60 constitutes a complete description of the invention and since the disclosure of it on August 1, 1938, was corroborated by the testimony of the witness who had signed his name as such to the exhibit on that date, the board awarded such date for conception of the invention in issue to appellee. Such holding, in our opinion, was proper.

Because appellee's alleged reduction to practice was not corroborated, constructive reduction to practice was awarded him as of the filing date of his original application, March 31, 1939.

The board held, and properly so in our opinion, that appellant had not conceived the invention in issue until December 1938. It did not award any date for actual reduction to practice by appellant and stated that that question was of no particular importance since the main issue of the case was one of originality and thus the reduction to practice as a result of commercialization of the pouch would inure to the first conceiver.

Appellant in his brief makes no contention that he actually reduced the invention to practice, but relies entirely for a constructive reduction to practice on the basis of the date of his Canadian application. He rests upon the following reasons of appeal for a consideration of his Canadian application:

"14. The Board erred in not finding Yeates to be the first to conceive.

"15. The Board erred in not finding Yeates to be the first to reduce to practice."

"29. The Board erred in stating "The question of reduction to practice is of no particular importance."

Appellee contends that none of those alleged errors is sufficient to invoke our jurisdiction with respect to a consideration of the Canadian application. We agree with such contention. A reading of those reasons of appeal indicates that they do not comply with the requirement of the statute (Sec. 4913 R.S., U.S.C., title 35, sec. 61, 35 U.S.C.A. § 61) that the reasons of appeal shall be specifically set forth in writing. Those alleged errors relate entirely to the question of conception and reduction of the invention to practice and by no interpretation can be held to point out that the board erred in not considering the Canadian application.

The only answer made by appellant to such contention is that reasons of appeal 15 and 29 are sufficient under the doctrine announced in the case of In re Wagenhorst, 20 C.C.P.A., Patents, 991, 64 F.2d 780, 783, 17 USPQ 330. The issue in that case with respect to the sufficiency of the reasons of appeal read as follows:

"1. The Board of Appeals erred in affirming the reason of the Primary Examiner finally rejecting claims 1, 4, 6, 7, 8 and 10 of the above entitled application."

That reason of appeal was held to be sufficient because it traversed the reason given by the Primary Examiner which was affirmed · by the board, and therefore, it pointed out specifically a reason for appeal. This court has many times been called upon to pass upon the sufficiency of reasons of appeal, but in none of its decisions' has it· held that .such broad, inclusive, and generally alleged errors such as 'those relied on here were sufficient. Among the many decisions of this court in this respect, see In re Davis, et al., 29 C.C. P.A., Patents, 723, 123 F.2d 651, 51 USPQ 458; In re Rosenblatt, 28 C.C.P.A., Patents, 1036, 118 F.2d' 590, 49 USPQ 117; In re Wheeler, 23 C.C.P.A., Patents, 1241, 83 F. 2d 904, 30 USPQ 20; Mas v. Root, 19 C.C. P.A., Patents, 819, 54 F.2d 435, 12 USPQ 13; Southgate v. Greene, 19 C.C.P.A., Patents, 1129, 57 F.2d 374, 13 USPQ 160. Therefore we cannot consider appellant's Canadian application.

Since we hold that appellant was not the first to conceive, had not actually reduced the involved, invention to practice, and is not entitled on the record to have his Canadian application considered, it is not necessary to pass on the question of derivation.

The decision appealed from is affirmed. Affirmed.