**23 C.C.P.A.(Patents)**

## In re FERENCI.

### Patent Appeal No. 3608.

Court of Customs and Patent Appeals.
April 6, 1936.

LENROOT, Associate Judge, dissenting in part.

Sydney I. Prescott, of New York City (Joseph Shea, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the examiner requiring division between claims 47 and 48 and the other claims of appellant's application, all of which are claimed to relate to a bread slicing and wrapping machine. The sole question involved is the correctness of the ruling of the tribunals in requiring said division.

On the theory that the requirement of division, not acquiesced in by the applicant, amounted to a final rejection of the claims, we have heretofore held the question of division not to be merely interlocutory and have taken jurisdiction in such appeals. In re Hawkins, 57 F.(2d) 367, 19 C.C.P.A.(Patents) 1104. See United States ex rel. Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 418, 48 L.Ed. 555.

Appellant's bread slicing and wrapping machine comprises a wrapping material severing means (paper cutter), and a bread slicing means, both of which are designed to function, when desired, in connection with a bread wrapping machine. The wrapping material severing means is defined in claim 47 and the bread slicing means is defined in a part of claim 48. The subject-matters of claims 47 and 48 are subcombinations of the whole machine which is defined in a great number of allowed claims. Allowed claims 13 and 14 and claims 47 and 48 follow:

"13. In a combined slicer and wrapping machine, the combination with means for forwarding articles to be sliced and wrapped, of slicing means, means actuated by engagement with an article on said forwarding means to feed a predetermined length of material from a reel of wrapping material, means for severing the web of wrapping material at a suitable distance from its leading end to form a wrapper blank, means for positioning the severed wrapper blank to be engaged by a sliced article, mechanism for pushing an article from said forwarding means through said slicing means into engagement with said wrapper blank to partially enwrap it about the circumference of the sliced article, means acting to complete the circumferential enwrapping of the article, and means for folding the end flaps of the wrapper blank to complete the wrapping of the sliced article, *said severing means including a ledger plate, a knife, a cam, means for rotating said cam, mechanism actuated by said cam to cause said knife to cut off the wrapping material on said ledger plate, said mechanism including a yieldable connection, and manually operable means for actuating said knife to sever the wrapping material when it is desired to cut the wrapping material while the rotation of said cam has stopped.*" (Italics ours.)

"47. Wrapping material severing means including a ledger plate, a knife, a cam, means for rotating said cam, mechanism actuated by said cam to cause said knife to cut off the wrapping material on said ledger plate, said mechanism including a yieldable connection, and manually operable means for actuating said knife to sever the wrapping material when it is desired to cut the wrapping material while the rotation of said cam has stopped."

"14. In a combined slicing and wrapping machine, the combination with means for forwarding articles to be sliced and wrapped, of slicing means, means actuated by engagement with an article on said forwarding means to feed a predetermined length of material from a reel of wrapping material, means for severing the web of wrapping material at a suitable distance from its leading end to form a wrapper blank, means for positioning the severed wrapper blank to be engaged by a sliced article, mechanism for pushing an article from said forwarding means

through said slicing means into engagement with said wrapper blank to partially enwrap it about the circumference of the sliced article, means acting to complete the circumferential enwrapping of the article, and means for folding the end flaps of the wrapper blank to complete the wrapping of the sliced article, *said slicing means including a slicer frame, oscillating knife frames carried by said slicer frame, slicing knives supported on said knife frames, a motor carried by said slicer frame, eccentrics mounted on the shaft of said motor and connected to said knife frames to oscillate the same, manually operable means for moving said slicer frame in and out of operative position, and means for locking said slicer frame in operative or non-operative position.*" (Italics ours.)

"48. Bread slicing means including a slicer frame, oscillating knife frames carried by said slicer frame, slicing knives supported on said knife frame, a motor carried by said slicer frame, eccentrics mounted on the shaft of said motor and connected to said knife frames to oscillate the same, manually operable means for moving said slicer frame in and out of operative position, and means for locking said slicer frame in operative or nonoperative position."

It will be noticed that the language in italics in claim 13 is identical in all material respects with the language of said claim 47, and that the italicized portion of claim 14 is identical in all material respects with the language of said claim 48.

The machine as a whole is quite complicated and consists of many parts. It would be very difficult to here describe the parts and their functions. We do not think a full description thereof is necessary to a decision of the issues involved.

The examiner describes the machine and its operation in the following language:

"The machine consists of means for slicing and wrapping loaves of bread which are fed by conveyor pusher bars from a feed table. A slotted reciprocating conveyor pushes loaves through the slicer unit, against a cut wrapper and onto an elevator which raises the partially wrapped sliced loaf to a higher level where the wrapping is completed. If loaves are to be wrapped unsliced means are provided for displacing the slicer to an inoperative position.

"The slicer unit which comprises a series of parallel oscillating knives and necessary operating connections is mounted upon rods, connected at one end by [a] bracket. A threaded rod, having a square extension upon which is mounted a crank handle, is provided for moving the slicer into and out of operative position. When [the] rods are in 'out' position the slicer may not operate.

"The wrapper web is fed by rollers over a cutting table under a knife adjustably mounted in [a] bracket pivoted on a shaft into [a] paper guide mounted on the elevator. [The] knife cooperates with [a] ledger plate to sever a predetermined length from the web. Normally [the] knife is operated through rods to which forked brackets are fastened, by [a] bell crank lever mounted on [a] shaft. These levers are actuated through [a] rod from [the] bell crank lever engaging by means of [a] roller with [a] cam. In order to cut by hand, in adjusting the machine, etc., the upper end of [the] rod engaging with [the] lever is equipped with a housed spring which permits [the] lever to be operated independently of the position of [the] cam. A hand lever is mounted on [a] shaft." (Reference and figure numerals omitted; words in brackets supplied.)

In re Burns, 83 F.(2d) 292, 23 C.C.P.A.(Patents) —— (Patent Appeal No. 3609); In re Goerke et al., 83 F.(2d) 294, 23 C.C.P.A.(Patents) —— (Patent Appeal No. 3610); In re Ferenci, 83 F.(2d) 286, 23 C.C.P.A.(Patents) —— (Patent Appeal No. 3611); and the instant appeal (No. 3608), were all heard on the same day, and counsel in the instant appeal also represented the appellants in the other cases. Appellant's counsel filed briefs but made no oral argument here in any of the appeals. The questions involved in this appeal are presented in some of the other said appeals, and when the cases were submitted and oral argument thereof made by the solicitor for the Patent Office, the citations of authorities and arguments made in the briefs in all the appeals were referred to in the oral argument of the instant appeal.

Appellant in this appeal, as in the other appeals, challenges the right and propriety of the examiner in requiring division. In very forceful and elaborate

briefs, appellant has cited and discussed many pertinent authorities which extend over a period beginning with the early consideration of the question to the present date, and contends, in substance, that if a subcombination forms a proper and essential part of a patentable combination, although it be a separate invention from the combination, it should be and must be claimed in the same application in which are presented the combination claims; that the statute authorizes an applicant to include more than one invention in one application; and that the Patent Office has no statutory authority or discretionary power to require an applicant to make separate applications for his two or more inventions. On the proposition that the applicant has no choice in the matter and must not divide his claims, even though the Patent Office requires it, because so doing would render the claims invalid, he cites the case of Remington Rand Business Service, Inc., v. Acme Card System Co. (C.C.A.) 71 F.(2d) 628, 633, in which it was held that "the second Powell patent" was invalid by reason of double patenting although obtained in a second application suggested in a divisional requirement of the Patent Office.

We understand appellant's position to be that the subcombinations here involved are dependent inventions—dependent on his combined invention—merely because these subcombination subject-matters are necessary parts of his allowed combination claims.

The solicitor for the Patent Office traverses the last-stated contention (in his brief in Patent Appeal No. 3611) as follows: "As before stated, it seems to be appellant's position that because 'no combination can be independent of its elements' appellant has shown dependence of the claimed inventions within the meaning of Rule 41. That Rule, however, gives no right to join two inventions merely because one is dependent upon the other. The two or more inventions which may be claimed in one application are those which are 'dependent *upon each other.*' Accordingly, because appellant has shown that the combination depends upon the subcombination, that is no proof at all that the subcombination depends upon the combination."

The solicitor for the Patent Office argues, in substance, that the courts have frequently held, for instance in United States ex rel. Steinmetz v. Allen, supra, that the Patent Office necessarily must have some discretion in requiring separate applications for separate inventions, and that while old rule 41, which required that "claims for a machine and its product," and "claims for a machine and the process in the performance of which the machine is used," must be presented in separate applications, had been held invalid, the present rule 41, which provides that "two or more independent inventions cannot be claimed in one application," is in harmony with the decisions of the courts, and therefore valid, and that the Patent Office did not abuse its discretion in requiring the division here complained of.

The solicitor, speaking for the Patent Office, contends that division was properly required in this instance because the subcombinations defined in said claims 47 and 48 relate to subject-matters, each of which has "attained a distinct status in the art," and that the case of In re Creveling, 46 App.D.C. 536, where it was held that claims to a rheostat should have been presented in an application separate from the one in which claims were presented to the system in which the rheostat was used, is controlling of decision of the issues at bar. He argues that the fact that patents have been granted for the subject-matter of certain subcombinations indicates that such matter has attained a distinct status in the art. He then suggests that obtaining additional fees is not the only reason for requiring division of claims for different inventions; but that in order that applications may have prompt and efficient consideration in the Patent Office, division often is essential and necessary, and that bringing about such a result does not constitute an abuse of discretion.

This court recognizes that much confusion and uncertainty have resulted from the adoption and enforcement in the Patent Office of divisional requirement rules which were intended to guide and direct patent applicants and Patent Office officials. One anomalous result, flowing from the enforcement of such rules, which has frequently happened, is that after division has been required and the applicant has complied therewith, the divided claims have been rejected on the ground of double patenting, although it is obvious that division was required upon the theory that the original application contained claims for

more than one independent invention. See In re Cady, 77 F.(2d) 106, 22 C.C.P.A. (Patents) 1190, and In re Carlton, 77 F.(2d) 363, 22 C.C.P.A.(Patents) 1223.

In cases like that at bar the possibility of the inventor, through no fault of his, but by reason of the uncertainty which exists, losing the reward for his efforts, is a matter of such serious and grave concern as to call for renewed efforts on the part of all concerned to remove as far as is humanly possible much of the uncertainty which exists. It was said in United States ex rel. Steinmetz v. Allen, supra, quoting from Bennett v. Fowler, 8 Wall. 445, 19 L.Ed. 431: " 'It is difficult, perhaps impossible, to lay down any general rule by which to determine when a given invention or improvements shall be embraced in one, two, or more patents. * * * It is often a nice and perplexing question.' " It is not our purpose to here lay down any hard and fast rule which may be applied to every set of circumstances.

We approach the question by stating, first, that it is unquestioned here or elsewhere that under the statute an applicant may include in one application more than one invention if the inventions are "related," United States ex rel. Steinmetz v. Allen, supra, or where they "relate to a like subject, or are in their nature or operation connected together," Hogg et al. v. Emerson, 6 How. 437, 483, 12 L.Ed. 505; second, that the Patent Office necessarily has "some discretion" in requiring division where more than one invention is applied for in one application, United States ex rel. Steinmetz v. Allen, supra; and, third, that the discretionary power of the Patent Office is reviewable, United States ex rel. Steinmetz v. Allen, supra; Miller v. Eagle Mfg. Co., 151 U.S. 186, 198, 14 S.Ct. 310, 38 L.Ed. 121; In re Hawkins, supra.

The problem is complicated when we are confronted with the statement by the Supreme Court in Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 319, 29 S.Ct. 495, 501, 53 L.Ed. 805, that "claims are independent inventions," and further have our attention called to the fact that the same court in United States ex rel. Steinmetz v. Allen, supra, in holding old rule 41 invalid, said, in substance, that such hard and fast rules, if made applicable to all cases, take away discretion and ignore differences which invoke discretion.

In disposing of the issues here involved, it is necessary for us to consider the question as to when two inventions may be said to be so related, so dependent upon each other, or so connected together as to be properly included in a single application.

The examiner in the instant case gave as a reason for requiring division that the subcombinations defined in claims 47 and 48 were separate and distinct inventions, and that the fact that they were independent inventions was recognized in the Patent Office where "inventions of these types are searched in separate classes and in separate divisions."

The Board of Appeals, in its decision, went more into detail on the question and stated:

"There is no question but that sheet material severing means and bread slicing machines *have each acquired a distinct status in the art* and we can see no reason why improvements on machines of this nature should not be regarded as different inventions from improvements on wrapping machines. Certainly it is not the established practice to permit an applicant to claim specific improvements in the details of a combination *where these details are adapted for use generally in other structures or combinations and their functions are well understood.* It would seem as logical to ask for a claim on a new nail, capable of general use, in an application for a new wooden receptacle where nails of this type happened to be employed for holding the parts of the receptacle together." (Italics ours.)

"The fact that claims have been allowed containing the specific details of the sheet material severing and bread slicing means, we do not regard as affecting the situation as it is to be presumed that the examiner has found a patentable relationship between these cutting means and the wrapping means in the claims referred to by appellant. Under some circumstances an element may be patentable per se, if new, and also form a part of a patentable combination with other elements, whether this element is new or old, and yet the two inventions may be distinct and not entitled to protection in the same patent."

It will be noticed in the above quotation that there are two main reasons which

brought the board to the conclusion that the inventions were so unrelated as to prevent their being included in the same application: First, agreeable to the holding in Re Creveling, supra (although not cited), it is pointed out that the wrapping material severing means and the bread slicing machine "have each acquired a distinct status in the art"; second, it is intimated that the details of the subcombination claims "are adapted for use generally in other structures or combinations and their functions are well understood."

While we approve of the application of these two considerations in determining when two or more inventions may be "related" in respects heretofore referred to, we are not willing to say that the application of one or both of them may in every instance be determinative of the question. We think, however, that where a subcombination has acquired an independent status in the art, as is evidenced by patents being granted for the subject-matter of such subcombination, and a separate examining division in the Patent Office is set up for its consideration, and where the subject-matter of such combination is a matter of common understanding and is adapted for substantial, practical uses other than in, and independent of, the general combination, it ordinarily would not be regarded as being so related to the general combination as to entitle it to be claimed in the same application with the combination to which it belonged.

Obvious difficulties in making application of the foregoing principles in every instance where the question might arise would suggest that they should not be regarded as inflexible and indispensable criteria. In some of the cases involving this question, there might be no factual basis for the application of all the above principles, and yet the subcombinations there involved might clearly be unrelated to the other claimed subject-matter.

The views above expressed are, in part, very clearly and succinctly stated at page 465 of the Journal of the Patent Office Society, vol. 1, No. 9, in an article by C. H. Pierce, and we quote therefrom as follows: " * * * it is believed to be the more modern doctrine and practice that where an element or subcombination which is claimed in the same case with a combination of which it forms a part, even if that combination be new, is clearly capable of use apart from the combination and in other relations and not restricted in its design, operation and capabilities to use therewith, and if in addition there is a developed state of the art in relation to it, constituting a different field of activity and search, division may be required without awaiting determination of the novelty of the combination."

Now, guided by the principles hereinbefore approved, we come to the question as to whether or not the examiner erred in requiring appellant to divide his said claims 47 and 48 from the remaining claims of his application, and apply for each of them in a separate application.

We will first consider the wrapping material severing means defined in claim 47. We are of the opinion that it is not so "related" to the bread slicing means defined by claim 48 and is not so related to the subject-matter of the other claims of the application as to warrant its inclusion in the single application at bar. The purpose of the wrapping material severing means is to cut from a roll pieces of the wrapping material in the desired length, depending on the size of the article to be wrapped, and it is clearly shown in the application that this mechanism can be operated independently of the operation of the remainder of the machine and that it is so constructed that it may be operated by hand for cutting wrapping material in different lengths, and, as far as anything appears, for purposes other than bread wrapping.

The board found that such devices had acquired a distinct status in the art and the examiner pointed out that, as heretofore stated, in the Patent Office devices of this character are searched for in a different division from that of bread wrapping machines and bread slicing units. It is apparent that the wrapping material severing means is designed to be used and may be used for substantial and commercially practicable purposes other than in combination with the other units of the machine as a whole. In view of all the facts and circumstances in the case, we conclude that the subject-matter of claim 47 does not define an invention so related to or dependent upon the combination as a whole as to warrant including the same in the same application with the other claims and that, therefore, the action of the examiner in requiring division

of this claim from the other claims in the application was proper and not an abuse of discretion.

Now, let us consider the nature of the invention involved in claim 48 which is directed to the bread slicing means and the elements associated with it in the claim. Here, for convenience, we again quote the claim and italicize a portion of the same: "48. Bread slicing means including a slicer frame, oscillating knife frames carried by said slicer frame, slicing knives supported on said knife frame, a motor carried by said slicer frame, eccentrics mounted on the shaft of said motor and connected to said knife frames to oscillate the same, *manually operable means for moving said slicer frame in and out of operative position, and means for locking said slicer frame in operative or nonoperative position.*"

The specification clearly discloses a bread slicing means which may be disassociated from the whole machine by turning a handle, which is a part of the whole machine, and, by employing a device operated on a principle similar to that of the screw conveyor, the slicer, when uncut bread is to be wrapped, is pushed entirely to one side of the main machine and there, as we understand applicant's structure, remains inoperative and is incapable of operation as a bread slicer. While in this inoperative position, it has no adequate means of support and no means is provided for feeding or removing the bread. Notwithstanding all these facts, there is language in said claim 48 defining a bread slicer, and if the claim as a whole only defined a bread slicer, our conclusion would be the same as it was relative to the wrapping material severing means, supra.

[9-11] For our purposes, we must determine the character of the invention expressed in claim 48 by the terms of the claim itself. We are of the opinion that the claim calls for more than bread slicing means, which devices, according to the Patent Office tribunals, have attained a distinct status in the art, and which have uses other than in the combination described in appellant's application. Said claim 48 not only calls for a bread slicing means, but includes the important feature, we think, of the manually operable means for moving the slicer frame in and out of operable position and also includes means for

locking the slicer frame in operable and inoperable position, both of which means are parts of the whole machine. We think that claim 48 defines something more than a bread slicing means and that its terms disclose the dependence of the elements covered by the claim upon the machine as a whole. Therefore, we conclude that the subcombination defined in claim 48 is so related and so dependent upon the combination as a whole as to entitle the claim being included in an application with the combination claims and that the requirement of division as to such claim was an abuse of discretion.

We think it proper to here say that our ruling in connection with the requirement of division as to said claim 48 should not be understood to mean that every immaterial subject-matter that might be added to a bread slicing means claim or a similar claim would necessarily bring us to the same conclusion as is herein arrived at.

The case of In re Rundell, 55 F.(2d) 450, 19 C.C.P.A.(Patents) 932, is relied upon by the appellant. In re Hawkins, supra, has also been cited as having a bearing on the instant case. In the Rundell Case there was involved an order for division between combination claims and a claim defining the subject-matter of a subcombination. The machine there invented was for successively heating plastic caps for bottles and applying the caps to the bottles. The subcombination involved in the claims required to be submitted in a separate application defined the cap crimping device. While it was urged in that case that the crimping device had acquired a distinct place in the art, it was not shown that the applicant's crimping device had, or was designed to have, any substantial, practical use except in the combination. It may have had such other use or uses, and it is possible that other facts might have been shown that would have convinced this court that Rundell's claims for a crimping device involved an unrelated invention; but the facts there are different from the facts here, and we are not disposed to regard the said Rundell Case as authority for sustaining the applicant's contention in the instant case as to the wrapping material severing means.

The Hawkins Case, supra, merely followed the Rundell Case and, as in the Rundell Case, there was no satisfactory showing that the chemical subcombinations

were unrelated as is shown in the instant record as to claim 47.

Appellant has with much force stressed the fact that rarely, if ever, have the higher courts held a patent invalid because of the fact that it contained two inventions, but that such courts have on numerous occasions held patent claims invalid on the ground of double patenting when the subject-matter had not been included in an application with other related inventions. This fact alone does not warrant this court in holding that the Patent Office abused its discretion in requiring appellant to file a separate application for his wrapping material severing means. This consideration may argue for a more liberal application by the Patent Office of its rule 41 in the direction suggested by the appellant. In other words, it is probably true that it is less harmful for the Patent Office to commit error in allowing more than one invention to be included in the same patent than to err in the opposite direction. However, we must not overlook the proposition that where combination claims and subcombination claims are involved in a divisional requirement, there is less likelihood of claims being held invalid for double patenting than in the case of applications involving claims for a process and the product thereof, or a machine and its method. Many cases to which our attention has been called disclose that in the latter type of application it is often a close question as to whether the product or the article possess inventive features distinct from the process or the machine method.

Surely, it could not anywhere be plausibly urged that the invention defined by the wrapping material severing means in claim 47 is the same invention as the combined machine as a whole, and we are of the opinion that the case of Sessions v. Romadka et al. (C.C.) 21 F. 124, decided by Circuit Judge Dyer, to which the solicitor has called our attention, is not out of harmony with the above-expressed views.

We think that the examiner erred in requiring division of claim 48 from the other claims in the application and that the board erred in affirming his requirement in this respect. It follows that the decision of the Board of Appeals should be and it is hereby modified, and the cause is remanded for such further proceedings in the premises as are consistent with the views herein expressed and as may be further provided by law.

Modified.

LENROOT, Associate Judge, dissents as to claim 48.