95 C.C.P.A.(Patents)

## Application of FREEMAN.
### Patent Appeal No. 5390.

Court of Customs and Patent Appeals.
Feb. 10, 1948.

Edmund H. Parry, Jr., of Washington, D. C. (Olen E. Bee and Oscar L. Spencer, both of Pittsburgh, Pa., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 5, 6, 7, and 8, in appellant's application for a patent for an alleged invention relating to a coating composition.

Claims 5 and 6, which are typical of the rejected claims, read:

"5. A coating composition comprising the extract phase of a natural unpolymerized glyceride oil obtained by liquid phase extraction with a selective organic polar solvent of a natural unpolymerized glyceride oil comprising a mixture of relatively saturated and relatively less saturated glycerides, the latter glycerides having drying properties, said composition being substan-

tially enriched in the unsaturated glycerides and impoverished in the more saturated glycerides and having a substantially higher rate of air drying than the original oil.

"6. A coating composition comprising the extract phase of a natural unpolymerized glyceride oil obtained by liquid phase extraction with a selective organic polar solvent of a natural unpolymerized glyceride oil comprising a mixture of relatively saturated and relatively less saturated glycerides, the latter glycerides having drying properties, said composition being substantially enriched in the unsaturated glycerides and impoverished in the more saturated glycerides and having a substantially higher rate of air drying than the original oil, said composition further including a pigmentary material in admixture therewith."

The references relied on are the patents to

Grote, 2,113,960, April 12, 1938.

Freeman, 2,200,391, May 14, 1940.

The patent to Freeman is appellant's patent.

The coating composition disclosed in appellant's application and defined by the appealed claims includes, as its essential element, the extract phase of a natural unpolymerized glyceride oil, which may be soya bean oil, the extract phase being obtained by liquid extraction with a selective solvent which solvent has the property, when used under proper temperature conditions, of removing the relatively less saturated components of the glyceride oil, resulting in a product which is richer in those relatively less saturated components than the original oil, with a resultant improvement in the rate of air drying.

The patent to Grote discloses a method of separating saturated and unsaturated components of various organic substances, which method involves the use of a selective solvent which will at a certain temperature dissolve saturated components of the starting substance but not the unsaturated components.

Appellant's patent discloses the identical extraction process of the present application and broadly suggests the use of the extract phase in paints and varnishes. The patent does not contain detailed information, which is included in the present application, as to the making of paints or varnishes.

On September 9, 1940, the Primary Examiner rejected claims 1 to 5, inclusive, and 7 of the present application on the ground of double patenting in view of appellant's patent. An argument was filed by counsel for appellant in response to that rejection, and the rejection on that ground was not repeated by the examiner. Thereafter, claims 1 to 8, inclusive, were finally rejected on various grounds, not including double patenting, but including a rejection on the disclosure in the patent to Grote. On August 5, 1943, the Board of Appeals affirmed the Primary Examiner's rejection on the Grote patent as to claims 1 to 4, inclusive, but reversed it as to claims 5 to 8, inclusive, which are the claims here involved, those claims being held patentable over the disclosure in the Grote patent by the board. Thereupon, on February 3, 1944, appellant canceled claims 1 to 4, inclusive.

On February 24, 1944, the Primary Examiner obtained jurisdiction from the commissioner to reopen the prosecution of the application for the purpose of rejecting all of the claims on the ground of estoppel arising out of an interference in which appellant's patent had been involved. The examiner's request for jurisdiction to reopen the prosecution of the application stated that "the instant product claims are indivisible from the patent process claims." After obtaining jurisdiction, the examiner rejected the claims not only on the ground of equitable estoppel but also on the ground of double patenting in view of the claims in appellant's patent, and lack of invention over the disclosure in the patent to Grote. The board reversed the rejection on estoppel but affirmed as to the other two grounds.

It is argued by counsel for appellant that the question of patentability of the appealed claims over the Grote patent is res judicata in view of the decision of the board on the first appeal and that since that issue has been adjudicated, it was improper to reopen the case for further consideration of it.

■ It is not argued here that the tribunals of the Patent Office were without authority to consider the question of double patenting. The Primary Examiner, after making his first holding of double patenting, as hereinbefore stated, did not urge it as one of the grounds of his first final rejection. Accordingly, the rejection on the ground of double patenting, after the case had been reopened, did not preclude the examiner from rejecting the appealed claims on that ground. Although it is true, as argued by counsel for appellant, that the fact that the examiner, after once using double patenting as a basis for rejection, and having apparently abandoned that ground of rejection in his original final decision in that case, might suggest, to some extent, that the ground was of doubtful propriety. Nevertheless, that issue is clearly before the court for consideration on its merits.

■ The claims of appellant's patent are process claims, whereas the claims here involved are product claims. However, since the product in each of the appealed claims is defined essentially in terms of the method by which it is made, the fact that the claims of the patent and the application are, technically, in different statutory classes, is not in itself, enough to avoid a rejection on the ground of double patenting.

Counsel for appellant points out that the process claimed in the patent results not only in the product covered by the appealed claims, which is rich in less saturated components, but also in a residue which is rich in saturated components. However, the appealed claims call for a product which is "obtained by liquid phase extraction with a selective organic polar solvent" and that the product is substantially enriched in less saturated glycerides. This product could not be produced without also producing a residue rich in more saturated components, although the appealed claims do not call for such a residue.

■ Counsel for appellant also relies on the fact that the appealed claims state that the claimed product is a coating composition and that it comprises the ex-

tract phase material specifically recited, which means that it may also include other ingredients. The issue thus presented is similar to that in the case of In re Jones, 149 F.2d 501, 32 C.C.P.A., Patents, 1020, and In re Jones, 162 F.2d 479, 34 C.C.P.A., Patents, 1150. In each of those cases it was held that a claim drawn to a growth regulating composition including a specified compound as an active ingredient did not differ, so far as the question of patentability was concerned, from a claim to the specified compound per se. It follows that, so far as the question of patentability is concerned, appealed claims 5 and 7 are to be considered as if they were drawn merely to the glyceride oil extract which is the only material specifically defined in them. Appealed claims 6 and 8, in addition to this material, call for a pigmentary material broadly but, since it is evident that the mere addition of a pigment to any material which it is desired to color is not a matter of invention, claims 6 and 8 are in the same position, so far as the issue of double patenting is concerned, as claims 5 and 7.

As hereinbefore stated, the disclosures in appellant's patent and in the involved application are identical so far as the process and the products resulting therefrom are concerned, although the involved application contains additional disclosure as to specific uses of the products in coating compositions. Furthermore, it is stated broadly in appellant's patent that the product claimed here possesses properties which make it useful in paints and varnishes. Counsel for appellant contends that this disclosure would not have supported the appealed claims which are drawn to coating compositions, since the patent does not explain how such compositions can be made. There is nothing of record to indicate that any new technique or materials would be required for using the claimed compositions as ingredients in coating compositions. On the contrary, the application here involved contains a statement that it is a division of the application on which appellant's patent was granted, although the examiner stated that the involved application is a continuation in part of the original application, and in

an argument in support of the statement that a divisional relationship existed, counsel for appellant urged before the Primary Examiner that the matter describing the preparation of coating compositions, which matter is contained in the application but not in appellant's patent "is merely designed to indicate the formulation of a typical paint composition. Formulation of paints is, of course, conventional." Although the examiner held the specific descriptions of coating compositions to be new matter, not supported by the disclosure in the patent, he did not hold that one skilled in the art could not prepare any coating composition on the basis of the patent disclosure. We are of opinion that the disclosure in appellant's patent clearly supports and is a basis for each of the appealed claims, since those claims are drawn to coating compositions broadly and not to the specific compositions described in that portion of the specification which the Primary Examiner held to be new matter.

Counsel for appellant argues that the appealed claims, being drawn to compositions, are divisible from the process claims of the patent, but in view of the complete dependence of the product claims on process limitations, we are unable to concur in that contention.

It is true that the claims of the patent and the application differ in the scope of their process limitations, but we are of opinion that they are directed to a single invention. Under such circumstances, mere differences in scope do not justify the issuance of separate patents. See In re Christmann et al., 128 F.2d 596, 29 C.C.P.A., Patents, 1037, and In re Loiseleur, 158 F.2d 309, 34 C.C.P.A., Patents, 765, and authorities there cited.

The instant case is similar, in many respects, to In re Byck, 48 F.2d 665, 18 C. C.P.A., Patents, 1208. In that case appellant obtained a patent on a composition of matter in which it was stated that the material was useful in forming electrically insulated films. In a later copending application appellant sought a second patent for a coil insulated with that composition. We there held that the rejection of the second application on the ground of double patenting was proper. It was pointed out in our decision in that case that it was necessary, in the original patented application, to disclose some utility for the composition, and that the uses disclosed did not constitute inventions separate from the composition itself. It was incumbent on appellant to point out in his patent some utility for the product of the claimed process, and one use disclosed was in coating compositions. That use, therefore, does not involve inventions separate from the invention claimed in the patent.

The various arguments advanced by counsel for appellant have been carefully considered, but we are of opinion that the rejection of the appealed claims on the ground of double patenting was proper. In view of this holding, it is unnecessary that we consider the other ground of rejection involved in this appeal.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.