39 C.C.P.A. (Patents)

**Application of HORNEMAN et al.**

**No. 5812.**

United States Court of Customs
and Patent Appeals.

Jan. 29, 1952.

Norman E. H. Deletzke, Chicago, Ill., for appellants.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 1, 3, 4, 10, 12, 13, and 24 to 34 inclusive of appellants' application, serial No. 741,088, for a patent on a butter product. No claims were allowed.

In their brief, appellants withdrew the appeal as to claims 1, 3, 4, 30 and 34. Such withdrawal is treated as a motion to dismiss these claims and the motion is allowed. In re Jannell, 120 F.2d 1012, 28 C.C.P.A., Patents, 1262. This leaves for our consideration claims 10, 12, 13, 24 to 29 inclusive, 31, 32 and 33.

On December 6, 1940, appellants filed an application for letters patent on a process for making a milk fat concentrate. That application issued as patent No. 2,423,834 on July 15, 1947. The application herein involved comprises a disclosure substantial-

ly identical with that of appellants' earlier application and was filed on April 12, 1947, thus making the two cases copending. The Patent Office tribunals therefore treated the present application as a division of appellants' prior patent referred to above.

All of the appealed claims were finally rejected by the examiner on the ground of lack of patentable novelty over conventional butter products. The claims were further rejected as unpatentable over appellants' copending patent No. 2,423,834 on the ground of double patenting. The board reversed the examiner on the first ground of rejection, but affirmed the rejection on the ground of double patenting. Hence, the correctness of this latter rejection is the sole issue before this court.

In their patent and present application, appellants disclose a process for producing a milk fat concentrate and butter respectively, which process comprises the following steps:

Cream of appropriate milk fat content is introduced into a chamber of subatmospheric pressure wherein it is subjected to direct action of steam while under reduced pressure. The milk fat in the cream which has been so treated, while still at a temperature above its melting point, is then concentrated by subjecting it to the action of a centrifugal type separator. Here the concentrated milk fat, containing 80–98% butterfat depending on the extent of centrifuging action, is separated from the other constituents of the cream. To produce butter, an aqueous solution containing salt and any other desired ingredients is added to this concentrate while in a liquid state. The resulting mixture is then passed to a unit where it is simultaneously cooled and stabilized, and it is then subsequently passed to a tempering unit where the desired texture of the product is developed.

In considering the claims involved here, it is deemed desirable to set forth the examiner's comparison of appellants' process and ordinary butter making. The examiner stated: "In the ordinary process, briefly, cream is churned to butter. In cream as in milk the fat which is often called milk fat or butterfat is in the dispersed phase whereas the non-fat liquids constitute the continuous phase. In butter the fat is in the continuous phase and the non-fat liquid, in this case water, is in the dispersed phase. Thus a reversal in colloidal phase relationship takes place when cream is churned to make butter. This change is from fat-in-water to water-in-fat. In applicants' process this change or reversal in colloidal phase relationship takes place not when the cream is worked into butter but prior thereto when the cream is treated to produce what applicants term 'concentrated milk fat,' * * * "

The sole reference relied on to sustain the double patenting rejection in issue is Horneman et al., 2,423,834, July 15, 1947. This reference is appellants' own patent referred to above.

Claim 24, which is one of the broadest of the appealed claims, was considered illustrative by the board. That claim reads as follows: "24. Butter, comprising a mixture of water and milk serum solids and butterfat in the continuous phase derived directly in liquid form from cream by destabilizing the cream and separating the liquid butterfat therefrom, said mixture when converted into butter having the consistency obtained by cooling and simultaneously stabilizing the mixture under a superatmospheric pressure for a period of time sufficient to crystallize a substantial portion of the fat crystallizable at room temperature."

For reasons presently to appear, we also set out claim 32, which is the most specific claim on appeal. That claim reads as follows: "32. Butter made by a process which includes the steps of destabilizing a dairy product containing milk fat in the dispersed phase, separating liquid milk fat in the continuous phase from the destabilized dairy product, adding to the separation fraction containing the milk fat in the continuous phase a quantity of standardizing solution taken from a group consisting of water and salt and milk serum solids whereby to produce the desired butter composition in the mixture, blending the standardized mixture, subjecting the blended mixture to cooling and simultaneous stabilization to a degree necessary to convert a substantial portion of the milk fat content of the mixture into minute milk fat crystals,

and thereafter subjecting the cooled butter to relatively quiescent confined flow for a period of time during which the major portion of the crystallization of the butterfat in the butter occurs."

The appealed claims, although directed to a product, include considerable recitation of process steps used in making it.

Claim 1 of appellants' patent is considered typical of the six method claims granted therein. That claim is set out below for comparison of the claims in issue with the claimed subject matter of the patent. It reads as follows: "1. The process of making a milk fat concentrate of value as an intermediate in the process of producing butter, which comprises subjecting cream containing milk fat in the dispersed phase to reduced pressure, subjecting the cream while at the reduced pressure to the direct action of steam, concentrating the milk fat by subjecting the treated cream while at a temperature above the melting point of said fat to a centrifuging action, and separating the concentrated fat in the continuous phase from the other constituents of said cream."

Towards the end of the disclosure in their copending patent No. 2,423,834, appellants stated: "It will be obvious to those skilled in the art that the milk fat concentrate of the present invention is particularly adaptable for use as an intermediate in the preparation of quality and composition controlled butter. It will also be obvious to those skilled in the art that the milk fat concentrate is also adaptable for use in the manufacture of cheese, ice cream, frozen desserts, confections, baked goods and the like."

The examiner held that "if it is obvious to make this butter from the intermediate milk fat product, as stated in the patent, then the butter so produced would be but an obvious application or adaptation of the patent and thus lacking in patentable distinction. Patentable distinction is required to avoid double patenting * * *." The board similarly held that if such use were obvious as stated in the patent, "then it is equally obvious there is not a second invention involved in the herein appealed claims over the claims of appellants' patent." The board further held that while the claims of

the two cases differ in scope and are not co-extensive, both sets of claims include as the principal feature of novelty recitation of the milk fat concentrate in terms of the manner in which it is produced, and therefore they are directed to a single invention.

An inventor is only entitled to one patent for one invention and he cannot prolong his monopoly by claiming nothing more than the same invention in different language. In re Fischer, 57 F.2d 369, 19 C.C.P.A., Patents, 1077, citing many authorities. It is settled law that if an inventor has obtained a patent for a certain invention, he may not, in a subsequent application, be allowed a patent containing claims which do not distinguish patentably over those of the issued patent. In re Copeman, 135 F.2d 349, 30 C.C.P.A., Patents, 962, citing In re Fischer, supra. When the appealed application is copending with the parent application, the latter is not a technical prior art reference but is to be looked to only for what it claims. In re Coleman et al., 189 F.2d 976, 38 C.C.P.A., Patents, 1156, and cases cited therein.

In the recent case of In re Coleman et al., supra, we discussed at some length various considerations which may have some bearing in deciding a question of double patenting. We there noted that a frequent double patenting situation involves claims related as combination and subcombination, or more broadly, where the subject matter of one application as claimed comprises only an element of the subject matter of the other application as claimed. Discussing the law pertaining to this situation, we stated:

"It is a settled law that a party might be entitled to a patent for a combination *because of the cooperation of the elements contained therein,* and at the same time be entitled to a separate patent for one of the elements of the combination. In re Carlton, 77 F.2d 363, 22 C.C.P.A., Patents, 1223; In re Ferenci, 83 F.2d 279, 23 C.C.P.A., Patents, 1023. In such a case, the question to be determined is whether two or more different inventive concepts are involved. In re Hadsel, 173 F.2d 1010, 36 C.C.P.A., Patents, 1075. If the claims are

so related that the separately claimed element constitutes the essential distinguishing feature of the combination as claimed, different concepts are not involved, the inventions are not distinct, and double patenting will be found. Palmer Pneumatic Tire Co. v. Lozier, 90 F. 732, 33 C.C.A. 255; In re Hawkins, 57 F.2d 367, 19 C.C.P.A., Patents, 1104. Conversely, where the element does not constitute the sole distinguishing novelty in the combination the inventions are distinct and double patenting will not be found. In re Creveling, 46 App. D.C. 536; In re Ferenci, supra.

"If the combination claim does not set forth any of the details of the separately claimed element, this is cogent evidence that the combination is not made patentable solely by the inclusion of the element. In re Creveling, supra. * * *" [Italics the court's.] 189 F.2d at page 979.

We think that the situation involved in the case at bar is analogous to that involving claims related as combination and subcombination in mechanical patent cases. The appealed product claims are based on the over-all disclosed process of making butter. The claims of the parent patent, however, are directed in detail to only an element of that over-all butter making process, namely, the method of making the milk fat concentrate which is of particular use in the complete butter making process. Thus the claims of the patent may be considered as "subcombination" claims, whereas the appealed claims may be regarded as "combination" claims. Hence, although the cases cited in the above quoted portion of In re Coleman et al., supra, did not involve process subject matter, as in the case at bar, the principles set out in that excerpt are, in our opinion, apposite to the instant case.

The problem before this court, therefore, is to determine whether, in the light of the principles discussed, the claims at bar were properly rejected on the grounds of double patenting. As we pointed out in In re Coleman et al., supra, quoting the Supreme Court[1], " '* * * to determine when a

given invention or improvements shall be embraced in one, two, or more patents * * * is often a nice and perplexing question.' " Each case must be determined on its own facts in consonance with the pertinent law.

Appellants contend that the statement of obviousness in the parent patent disclosure (quoted supra) referred only to the broad general concept of using the milk fat concentrate as an intermediate element in the production of butter in the same sense that the use of the concentrate in baked goods and ice cream, etc., was also declared to be obvious; that they have disclosed, and the claims in issue recite, particular and specific new method steps for converting the concentrate, made by the process claimed in their patent, into an improved butter product having a desired texture and containing several additional ingredients in desired proportions; and that, in view of these considerations, the board erred in holding that the above-quoted statement in the patent negatived the existence of a second distinct inventive concept.

It is our opinion that these contentions of appellants have merit. We agree with the board to the extent that the statement of obviousness involved here would negative the existence of invention in the broad general concept of using the concentrate produced by the patented claims for making butter; and claims relying on this broad general concept as the sole point of novelty would be properly rejected on the ground of double patenting. However, considering the patent disclosure as a whole, and the context in which this particular statement appears, we do not think that this statement can be properly construed as an admission by appellants that the particular, specific and allegedly new steps for converting the concentrate into an allegedly improved butter product are obvious and hence uninventive.

In reaching its conclusion that there was but one inventive concept involved, the board also relied in part on the cases of In re Freeman, 166 F.2d 178, 35 C.C.P.A., Pat-

1. Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 48 L.Ed. 555, quoting from Bennet v. Fowler, 8 Wall. 445, 75 U.S. 445, 19 L.Ed. 431.

ents, 920, and In re Byck, 48 F.2d 665, 18 C.C.P.A., Patents, 1208, cited therein. In re Freeman being the more pertinent of the two cases, we deem it unnecessary to discuss In re Byck. In the Freeman case, the inventor had obtained a patent on an extraction process for producing a certain type of oil, and in his patent disclosure he broadly suggested the use of that oil in paints and varnishes. He also filed a later copending application in which he claimed a coating composition defined essentially in terms of the method of making the oil base, which method was claimed in his patent; some claims also recited a pigmentary material the use of which the court regarded as obvious and not inventive. It is clear from its opinion that the court considered that any limitations in the contested product claims directed to the use of the oil in a coating composition were necessarily based on the broad suggestion of such use in the disclosure of the parent patent. The court therefore concluded that the separate sets of claims were based on but a single invention. That is, the parent patent was regarded as disclosing only a single inventive concept involving the production of an oil particularly useful as a paint or varnish base; and the broad concept of using that oil in a coating combination (such use being only broadly claimed) was not deemed an inventive concept separate and distinct from that claimed in the prior patent.

■ However, we think the case at bar distinguishable from In re Freeman, supra. Appellants here do not assert that there is a separate and distinct invention in the broad concept of using the concentrate for making butter. Rather, as discussed above, they assert that the second invention lies in the particular and specific and allegedly new steps for converting the concentrate into an improved butter product. The Freeman case would indeed be proper authority for a double patenting rejection of claims based essentially on the process of the parent patent claims. Under the holding of that case, moreover, the recitation in the claims of other known or obvious and uninventive features would not avoid such a rejection. Furthermore, as was also stated in In re Freeman, supra, the mere fact that claims are technically in different statutory classes does not avoid such a rejection. But, although we agree with the board that In re Freeman, supra, is proper authority to the extent discussed, we do not consider it to be authority for holding in the circumstances of this case that a specific particular method, comprising allegedly new and inventive steps for converting the concentrate into an allegedly improved butter product, must necessarily likewise be held not to involve a separate and distinct inventive concept.

The Patent Office tribunals cited no prior patents or publications to show the lack of patentable novelty or invention in the specific disclosed method steps for converting the concentrate to butter, which steps appellants allege are both new and inventive and result in a new improved butter product. Nor did the Patent Office tribunals even assert that these particular steps were obvious. The holding of the Board of Appeals that there was but a single inventive concept was based wholly on the two grounds which we have already discussed in detail and rejected as improper, namely, appellants' statement of obviousness in their patent quoted in the excerpt above and the board's interpretation of In re Freeman, supra. We therefore are of the opinion that the board erred in so holding.

Having resolved this question, we must now turn to the respective sets of claims to determine whether, in the light of the governing principles set out in the above-quoted portion from In re Coleman, supra, each set of claims is drawn to a separate and distinct invention.

Comparing the appealed "combination" claims (see claims 24 and 32 above) with the "subcombination" claims of the patent (see claim 1 above), we find the following:

(1) The "combination" claims in issue include only broad recitation of the "subcombination" without setting forth the details of the "subcombination" separately claimed in appellants' patent. This is particularly apparent in comparing appealed claim 24 with patent claim 1.

(2) The appealed "combination" claims recite, in varying detail, particular and

specific allegedly new method steps for converting the concentrate into a butter product having desired consistency and containing several additional ingredients in desired proportions. On the other hand, however, none of the "subcombination" claims of appellants' patent recite any of those steps. Hence, the appealed "combination" claims do not rely on the process of the patented "subcombination" claims as the essential or sole distinguishing feature of the "combination" as claimed. This is particularly apparent in comparing the most specific appealed claim 32 with patent claim 1.

Applying in particular the respective criteria of In re Hawkins, In re Creveling and In re Ferenci, cited in the excerpt from In re Coleman et al., supra, we are of the opinion that the appealed claims are patentably distinct from those of appellants' patent.

The Solicitor of the Patent Office contends in his brief that "* * * If it [the butter product of the appealed claims] is structurally different from ordinary butter, then it is not apparent why it need be defined by resort at all to process limitations. * * *," citing In re Moeller, 117 F.2d 565, 28 C.C.P.A., Patents, 932, wherein this court held that, barring the exceptions of unusual cases, it is generally improper to claim an allegedly new and inventive product in terms of the process by which it is made.

It is our opinion that, upon the record before us, we may not consider this contention. We may only consider the rejection of double patenting since that is the only issue properly before this court. A similar situation arose in the case of In re Davis et al., 29 C.C.P.A., Patents, 723, 123 F.2d 651. In that case, the propriety of a double patenting rejection was the sole issue properly before this court, and the solicitor argued the unpatentability of the claim *per se;* we there held that under such circumstances we could not properly consider the latter question raised by the solicitor.

Since it is our opinion, for the reasons hereinbefore set out, that the invention of the appealed claims is separate and distinct from the invention claimed in appellants' patent, we hold that the appealed claims were improperly rejected on the ground of double patenting.

In view of the foregoing, the appeal is dismissed as to claims 1, 3, 4, 30 and 34, and the decision of the Board of Appeals as to claims 10, 12, 13, 24 to 29 inclusive, 31, 32 and 33 is reversed.

Reversed.